## HINES et al. v. HANOVER CO., Inc., et al.
### (No. 1270—5309.)

Commission of Appeals of Texas, Section A.
Jan. 22, 1930.

Bullington, Boone, Humphrey & King, of Wichita Falls, for plaintiffs in error.

Carrigan, Britain, Morgan & King, of Wichita Falls, for defendants in error.

CRITZ, J. This suit was originally filed in the district court of Wichita county by Mrs. Sue Mitchell Hines et al. against S. H. Walton, Jr., E. P. Bowen, G. I. Dorrance, and the Hanover Company, a corporation, to cancel and terminate an oil and gas lease and all rights thereunder, alleged to be held by the defendants and each of them on a tract of land consisting of about 140 acres in Wichita county, Texas, fully described in the petition. All of the defendants, except S. H. Walton, Jr., answered by general demurrer, certain special exceptions, general denial, and also certain special answers, not necessary to detail here. S. H. Walton, Jr., did not answer, but made default.

The lease sought to be canceled and terminated recited a consideration of $6,950 cash, and conferred the right upon the lessee of entry, and its sole and only purpose was mining and operating for oil and gas, and of laying pipe lines, etc. It was to remain in force for a period of three years from its date, and as long thereafter as oil or gas, or either of them, was produced from said land by the lessee. The lease does not specify the number, location, or depth of the wells to be drilled. The express provisions of the lease with reference to forfeiture or termination read as follows:

"If no well be commenced on said land on or before the 21st day of March, 1920, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Iowa Park, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of thirteen hundred ninety (1,390.00) dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole then and in that event, if a second well is not commenced on said land within six months from expiration of the last rental period which rental has been paid this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payments of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payments of rentals as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments. If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in proportion which his interest bears to the whole and undivided fee. * * *

"If the estate of either party hereto is assigned and the privilege of assigning in whole or in part is expressly allowed the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed that in the event that this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental."

The evidence conclusively shows that some 14 wells have been drilled on the 140-acre tract here involved, of which 9 were produc-

ing wells and 5 of such wells have continued to produce small quantities of oil by pumping. The evidence further shows that there are about 9 deeper oil-bearing sands in the same general field as the 140 acres here involved. It is further shown that, at various distances to the north, south, east, and west of this land, deeper wells than the wells on this tract have been drilled without production, and that the field in which this tract is located is in what is generally termed as the shallow field. The wells drilled are shallow wells. These facts are found by the Court of Civil Appeals.

The plaintiffs' petition is rather voluminous, but, as shown by the opinion of the Court of Civil Appeals, the alleged grounds of forfeiture are, substantially, a failure to properly develop the land after the discovery of oil. In other words, the plaintiffs seek to cancel and terminate this lease for failure to properly and fully develop the land for oil, after oil has been discovered and brought in on said land. There is no showing of abandonment.

The Court of Civil Appeals very correctly finds: "Moreover, it is undisputed in the evidence that the lease in question has not been wholly abandoned. There has been at least a partial development of the land for oil and gas, and a partial effort to bring the oil discovered to the surface, for the benefit of all parties. And, as noted above, the defendants in error [meaning Mrs. Hines et al.] prior to the institution of this suit, made no demand for greater development or greater diligence in pumping on the land in controversy." It is further shown that Mrs. Hines et al. have accepted the royalties on the oil produced up to the time of the filing of the suit.

With the record in the above condition, the trial court submitted the case to the jury on special issues. These issues and the answers of the jury thereto are as follows:

"Special Issue No. 1. Did the defendant, the Hanover Company, Inc., E. P. Bowen, and G. I. Dorrance, prior to September 2, 1926, and subsequent to August 4, 1924, use reasonable diligence in developing for oil and gas the 140 acres of land described in plaintiffs' petition?

"Answer. No.

"Special Issue No. 2. Did the defendants, Hanover Company, Inc., E. P. Bowen, and G. I. Dorrance, prior to September 2, 1926, and subsequent to August 4, 1924, breach the duty of carrying out the essential purposes of the lease on the 140 acres described in plaintiffs' petition?

"Answer. Yes.

"Special Issue No. 3. Did the defendants, Hanover Company, Inc., E. P. Bowen, and G. I. Dorrance, prior to September 2, 1926, and subsequent to August 4, 1924, abandon the duty of carrying out the essential purposes in question?

"Answer. Yes."

Upon the verdict of the jury the trial court entered judgment in favor of Mrs. Hines et al. for the recovery of the land and canceling the lease and all evidence of title in all of the defendants. The case was duly appealed by the Hanover Company et al., being all of the defendants in the trial court, except S. H. Walton, Jr., to the Court of Civil Appeals for the Second District, at Fort Worth, which court, on July 14, 1928, reversed the judgment of the trial court and remanded the cause for a new trial. 11 S.W.(2d) 621. The case is now before the Supreme Court on writ of error granted on application of Mrs. Hines et al.

The application for the writ of error sets forth various assignments of error, but inasmuch as the Court of Civil Appeals finds, and the record conclusively shows, that there has been no abandonment of the lease in question, and at least a partial effort to bring the oil discovered to the surface for the benefit of all parties, no right of forfeiture has been shown. W. T. Waggoner Estate v. Sigler Oil Co. (Tex. Sup.) 19 S.W.(2d) 27, 32.

In the Waggoner Case, supra, Justice Greenwood of our Supreme Court very exhaustively discusses the question here involved and no good purpose could be served by our repeating them; we quote however, as peculiarly applicable to the facts and issues of the case at bar the following from Judge Greenwood's opinion in the Waggoner Case:

"Under the doctrine that the lessee acquires no absolute, but only a determinable, fee, there can be no complete cessation of the use of the leased land for purposes of mineral exploration, development, and production, save at the cost of loss of the lessee's estate. It is easy to confuse this principle with that of abandonment, which implies an intention to give up the interests granted. There should be no such confusion. Regardless of the lessee's intention, his estate terminates, under its limitation, when there is complete cessation of actual use of the land for the purposes of the lease. There can be no fraudulent evasion with respect to the use which keeps the estate alive. But it is not a partial use, nor a negligent use, nor an imperfect use, but cessation of use, which terminates the lessee's estate."

The only relief prayed for by Mrs. Hines et al. in the trial court was cancellation of the lease. Under the undisputed facts in the record and the findings of the Court of Civil Appeals, Mrs. Hines et al. were not entitled to such relief, for the reason that the evidence in the record, and the findings of the jury, at best, show a partial, negligent, or imperfect use of the land in question, and not an abandonment thereof, or a fraudulent use.

The conclusion we have reached with reference to this matter renders it unnecessary for us to discuss the other assignments of error.

For the reasons stated in this opinion, we recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding the cause to that court for a new trial, be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.