**S. V. WILLINGHAM, Appellant,**

v.

**B. B. BRYSON et al., Appellees.**

No. 15774.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 5, 1956.

Rehearing Denied Nov. 2, 1956.

Marshall, King & Jennings, and Frank Jennings, Graham, for appellant.

Rogers, Eggers & Sherrill, and Guy Rogers, Wichita Falls, for appellees.

BOYD, Justice.

This suit was instituted by appellees, B. B. Bryson and others, primarily against appellant S. V. Willingham to cancel an oil and gas lease, or in the alternative to require further exploration under penalty of cancellation. Appellees are the heirs at law of Mary A. Bryson, who, on April 21, 1928, as lessor, executed the lease in controversy. The lease covered 150 acres. By mesne conveyances the lease was subdivided into three tracts, one of 25 acres, one of 44.47 acres, and one of 80.53 acres, the latter now being owned by appellant and being the lease in controversy. In a trial to the court, judgment was rendered requiring appellant to begin the drilling of a well within ninety days after the judgment becomes final and to continue drilling with reasonable diligence to a depth sufficient to test the Marble Falls sand or to production in paying quantities at a lesser depth, and that failure so to do would terminate the lease except in so far as it covers ten acres around the one producing well thereon, the acreage to be selected by appellant.

The lease on the 80.53 acres was assigned to appellant on July 24, 1944. He has not drilled on the tract. Four wells had been drilled before appellant acquired the lease, one of which having ceased to produce before his acquisition and two of which having ceased to produce shortly after he acquired the lease. The remaining well is producing oil in very small but paying quantities.

The lease contains the following provisions:

"1. Lessor, in consideration of * * * the agreements of lessee herein contained, hereby grants, leases and lets exclusively unto lessee, for the purpose of prospecting and drilling for and producing oil and gas, * * *.

* * * * * *

"8. This lease shall never be forfeited, cancelled or terminated for failure by lessee to perform in whole or in part any of its implied obligations, nor while oil or gas is being produced in paying quantities for any cause whatsoever unless there shall first be a final judicial ascertainment that such obligation or cause exists and that lessee is in default. Upon such final determination, lessee is hereby given a reasonable time thereafter to comply with such obligation, or, at lessee's election to surrender the lease, with the option of reserving, under the terms of this lease, each producing well and ten acres surrounding it to be selected by the lessee. Lessee shall not be liable in damages for breach of any implied obligation."

Appellees alleged that the producing well "was drilled and completed long prior to the development of modern methods of completing a well. Such hole was not drilled and other sands were not tested under modern methods now used in the drilling and completing of wells in that vicinity. There are other and different sands from the one from which the present well is producing some oil that have never been sufficiently explored and a reasonably prudent oil operator would have drilled and would now drill other and additional wells upon such Eighty (80) acres to such depth as to test all sands reasonably expected to be encountered in that vicinity, would run an electric survey on each well so drilled and test each sand which was encountered in its drilling. A failure so to drill and test has been and now is a breach of the implied covenants of the lease, * * *."

Appellant contends that the judgment is without support because there is no competent evidence, or sufficient evidence, to show that a reasonably prudent oil operator would drill such well; that there is no evidence, or sufficient evidence, to show what would constitute reasonable development of the tract; and that there is no evidence to show that an additional well could be drilled under the spacing rules of the Railroad Commission.

In considering the sufficiency of the evidence to support the judgment, we must first determine the exact nature of the questions presented by this record.

 It is settled that there is an implied covenant reasonably to develop a lease after production is obtained, for the breach of which cancellation may be decreed. W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27. The rule in such cases seems to be that the lessor has the burden of showing what would constitute reasonable development, that the lease has not been reasonably developed, and that his damage is uncertain and incapable of ascertainment. Fort Worth Nat. Bank v. McLean, Tex.Civ.App., 245 S.W.2d 309.

An operator has breached the covenant of reasonable development when he refuses further to drill under "such facts and circumstances as will establish that a reasonably prudent and experienced oil operator, with full knowledge of all of such facts and circumstances, in the exercise of ordinary care, would have drilled additional wells on the land with a reasonable expectation of producing oil or gas therefrom in paying quantities." Summers Oil and Gas, Perm. Ed., sec. 414, p. 370. This duty is imposed upon the lessee because the failure further to drill might leave untapped oil which could be produced, or result in permanent loss of otherwise recoverable oil or a slower rate of production, thus depriving the lessor of the use of the capital represented by the unproduced royalty oil.

Appellant testified that he did not intend to drill until he thought it would be profitable. There was evidence that since any drilling was done on the lease, methods and techniques had been developed whereby wells are saved which otherwise would be worthless, and whereby production is increased in producing wells. It was shown that production had been secured in the general area from the Marble Falls and the Mississippi sands, deeper formations than that from which the present well is producing. One of appellant's witnesses, a geologist, testified that there was "a possibility that the Conglomerate and the Marble Falls would produce" on the lease in question, "but it is just a possibility." A witness for appellees testified that he would be willing to take a farmout and drill another well to the lower zones.

It seems to us that under the facts of this case we are required to determine whether there is an implied covenant to "explore" as distinguished from the covenant to "develop," and if there be such a covenant, what is the lessor's burden to show that he is entitled to further exploration or to a cancellation.

The proposition that there is an implied covenant in an oil and gas lease to explore

further, apart from the covenant of reasonable development, is sustained in several jurisdictions. One of the leading cases is Sauder v. Mid-Continent Petroleum Corp., 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454. Among other cases adhering to the rule laid down in the Sauder case are Doss Oil Royalty Co., v. Texas Co., 192 Okl. 359, 137 P.2d 934; Magnolia Petroleum Co. v. Wilson, 10 Cir., 215 F.2d 317; Humble Oil & Refining Co. v. Romero, 5 Cir., 194 F.2d 383; Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26; Neff v. Jones, Okl. 288 P.2d 712; and Sand Springs Home v. Clemens, Okl., 276 P.2d 262.

■ While the lessor's damage because of failure reasonably to develop is ordinarily occasioned by the loss of oil or by slowness of production from known deposits, the harm to appellees here stems from appellant's failure to explore for other deposits. Appellant now has the sole operating right. If he does not drill a test well, none can be drilled. Appellees are not just seeking another well to a known formation, but a well to explore for other formations. And the lessor's purpose in executing the lease was to have all the tract reasonably explored and developed, and not to place some of it beyond the possibility of exploration and development. A lessee does not have the freedom of choice in operating a lease as the landowner has in operating his land. The lessee cannot consult his own interest exclusively. While he idly holds a lease sincerely hoping for a future profit, he may actually be depriving the lessor of a present one. "The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land." Sauder v. Mid-Continent Petroleum Corp., supra [292 U.S. 272, 54 S.Ct. 674].

In no case examined by us involving a breach of the covenant of further exploration was the lessor required to prove that further exploration would probably result in profit. See Doss Oil Royalty Co. v. Texas Co., supra; Sauder v. Mid-Continent Petroleum Corp., supra; and McKenna v. Nichols, 193 Okl. 526, 145 P.2d 957.

We have found no Texas case which holds specifically that there is any implied covenant reasonably to "explore," as distinguished from the covenant reasonably to "develop." In at least one case it was said that such covenant did not exist where there was production and the lessee holds under a contract extending the lease over the entire tract " 'so long thereafter as oil, gas or other minerals is produced from said land, * * *.' " Spurlock v. Hinton, Tex. Civ.App., 225 S.W.2d 203, 205. Fort Worth Nat. Bank v. McLean, Tex.Civ.App., 245 S.W.2d 309, 311, appears to have been as much an exploration case as it was a development case, although the words "explore" and "exploration" are not used in the opinion. The court said that the evidence supported the finding of the trial court that the lease had been properly "developed" and held furthermore that "It was incumbent upon appellant to show that the drilling of more wells was necessary and that they could have been drilled at a profit to the lessee. * * *" In Hines v. Hanover Co., Tex.Com.App., 23 S.W.2d 289, 290, the court apparently held that the lessors mistook their remedy, if any, by seeking cancellation on the ground of abandonment, for the court said: "Under the undisputed facts in the record and the findings of the Court of Civil Appeals, Mrs. Hines et al. were not entitled to such relief, for the reason that the evidence in the record, and the findings of the jury, at best, show a partial, negligent, or imperfect use of the land in question, and not an abandonment thereof, or a fraudulent use."

Although "exploration" was not explicitly distinguished from "development" in Perkins v. Mitchell, 153 Tex. 368, 268 S.W.2d

907, the facts seem to justify its consideration as an exploration case; and there the Supreme Court affirmed a judgment of cancellation if the lessee failed to begin the drilling of another well within ninety days. It was shown that a lease on 203.4 acres was executed in 1947. A gas well was completed on 40 acres of the leasehold, the date not being shown in the opinion. No further drilling was done, and suit was filed to cancel the lease or in the alternative to require the lessee to "develop" the property. The jury found that the lessee had failed to develop the lease; that another well would constitute reasonable development; that lessor had sustained damage; and that the amount of his damage was incapable of ascertainment. A former owner of the lease who drilled the gas well testified that he would be willing to drill another well on the remaining 163.4 acres, as he thought he might get oil, although he did not drill a second well when he owned the lease. No issue was submitted as to whether there was reasonable expectation of profitable production. The prudent operator theory, however, was invoked by the trial court in telling the jury that " 'reasonable development' " was " 'such development as a reasonably prudent operator would perform on the land under the same or similar circumstances.' "

We believe that our Supreme Court in Perkins v. Mitchell, supra, has sustained the proposition that a lessee impliedly covenants reasonably to explore a lease after production has been obtained, under penalty of cancellation if he fails so to do; that the lessor is not required to prove that additional drilling would probably result in profit; and that the prudent operator rule was satisfied upon a showing that no well had been drilled on the remaining 163.4

acres since the discovery of gas on the 40 acres, coupled with the testimony of one witness that he would be willing to drill another well. The opinion does not disclose whether notice of breach or demand for performance was given before suit was filed.

 In our case, the trial court found that a reasonably prudent operator would now drill a well to a depth sufficient to test the Marble Falls sand and to test formations reasonably expected to be encountered below the one from which the present well is producing, in the reasonable expectation of profitable production, and that "There has been a breach of the express and implied obligations of such lease further to drill * * *." As indicated above, under the holding in Perkins v. Mitchell, supra, we think it was not necessary for appellees to prove that additional drilling would probably result in profit.

It is our view that this case involves the doctrine of implied covenant of further reasonable exploration; that there is such a covenant; and that the evidence is sufficient to sustain the court's finding that such covenant has been breached.

For a thorough discussion of the implied covenant of exploration, see Texas Law Review, April 1956, Vol. 34, No. 4, p. 553.

 We are of the opinion that the burden was on appellant to prove that he is precluded from drilling another well by the spacing rules promulgated by the Railroad Commission, if such be the fact. This appears to be a defensive issue, and there was no evidence on the point.

Believing that the evidence supports the judgment of the trial court, it is affirmed.