FELMONT OIL CORPORATION et al.,
Appellants,

v.

PAN AMERICAN PETROLEUM CORPO-
RATION et al., Appellees.

No. 5378.

Court of Civil Appeals of Texas.

El Paso.

March 30, 1960.

Rehearing Denied April 20, 1960.

Henry Russell, Pecos, John R. Lee, Kermit, Barrow, Bland & Rehmet, George T. Barrow, Sidney Farr, Houston, for appellants.

Carlton R. Winn, Jerry N. Jordan, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Edward R. Hudson, Fort Worth, Robert B. Whitehead, Midland, and L. A. Thompson, Tulsa, Okla., J. K. Smith, Charles L. Morgan, Fort Worth, of counsel, for appellees.

LANGDON, Chief Justice.

This is a suit brought by appellants, Felmont Oil Corporation and others, owners of certain undivided interests in the surface and minerals in and under the Hendrick Ranch in Winkler County, for cancellation, either outright or conditionally, of certain portions of two oil and gas leases on the Hendrick Ranch.

The two leases involved in this litigation are each dated March 27, 1925; each was executed by T. G. Hendrick and wife, Ida Hendrick, as lessors, to J. W. Grant, as lessee; and together the two leases cover forty-nine sections, or an aggregate of 31,260 acres of land in Winkler County. The T. G. Hendrick lease, so-called because his name appears first as lessor (sometimes referred to in this opinion as "Lease A"), covers sixteen sections, or a total of 10,240 acres. The Ida M. Hendrick lease, so-called because her name appears before that of her husband as lessor (sometimes referred to in this opinion as "Lease B"), covers thirty-three sections of land, or a total of 21,120 acres in Winkler County.

Appellants' suit for cancellation of portions of the two leases is based on the alleged ground that the defendant-lessees and their predecessors in title had breached the implied covenant in the leases to explore particular areas of these two leases held by Pan American Petroleum Corporation and Westbrook-Thompson Holding Corporation, appellees, referred to in the court below as the "Leaseholding Defendants". This suit by appellants is also brought against a large number of other defendants, who are identified as the "Mineral Owning Defendants", of which group John R. Thompson and thirty-two mineral and royalty owners, as appellees, have filed their brief herein, and have adopted the briefs filed by appellees Pan American and Westbrook-Thompson.

Each of the two leases was for a primary term of twenty years, from March 27, 1925, and as long thereafter as oil or gas, potash or other minerals, or either of them, is

produced from the said land. It is undisputed that on or about February 10, 1929 a well, producing oil in paying quantities, was completed on Lease "A", and since that date oil in paying quantities has been continuously produced from portions of the land covered by Lease "A". It is also undisputed that on or about November 6, 1926 a well, producing oil in paying quantities was completed on Lease "B"; and since that date oil in paying quantities has been continuously produced from portions of the land covered by Lease "B". Thus, oil in paying quantities was obtained from each lease within the primary term thereof.

Appellees Pan American and Westbrook-Thompson, the "leaseholding defendants", together own approximately 5,685 acres of the original 10,240 acres covered by Lease "A", and approximately 13,325 acres of the original 21,120 acres covered by Lease "B", or a total of approximately 19,010 acres of the 31,360 acres covered by the two leases. Of the remaining 12,350 acres covered by the original base leases, certain portions thereof have been released from the oil and gas leases. Certain other portions of the remaining 12,350 acres remain subject to one or the other of the two leases, but are owned by operators other than Pan American and Westbrook-Thompson; however, these other lessees are not parties to this suit.

Of the 5,685 leasehold acres owned by appellees under Lease "A", appellants seek to cancel, in some manner, 4,630 acres, or all but 1,055 acres of appellees' leasehold interest in Lease "A". The 1,055 acres upon which no cancellation is sought is apparently that portion of Lease "A" owned by appellees in Section 46, Block 26, P.S.L., and Sections 35 and 40, Block B–5, P.S.L., under which appellants own no interest of any character. As to Lease "A", appellants seek cancellation to all depths, on 3,730 acres, and cancellation below the depth of 3,200 feet on 900 acres.

It is appellants' position that they seek cancellation only upon those portions of the two base leases owned by appellees Pan American and Westbrook-Thompson. Appellees claim to own only 13,325 acres out of Lease "B", but appellants seek cancellation of 13,570 acres out of this lease. Cancellation as to all depths on 8,780 acres and cancellation below the depth of 3,200 feet on 4,790 acres is sought.

It is appellants' contention that the appellees Pan American and Westbrook-Thompson have only partially explored some of the acreage, and have wholly failed to explore the remainder of the acreage on which they seek cancellation; that 900 acres under Lease "A", and 4,790 acres under Lease "B", are "partially unexplored", and cancellation of such land below 3,200 feet is sought because of the alleged failure of appellees to explore this acreage below depths of 3,200 feet. There is no contention by appellants that appellees have failed to explore the shallower depths above 3,200 feet below the surface.

With respect to the remainder of the acreage sought to be canceled under the two leases, appellants contend that the implied covenant of exploration has been broken to all depths, shallow and deep, and seek cancellation of the leases on such acreage to all depths.

After trial to a jury, a take-nothing judgment was rendered on the verdict, in favor of appellees. This is an appeal from that judgment.

This appeal is predicated upon fifteen points of error. Appellants have divided these points into five main groups for purposes of argument, and they will be discussed by us in the same manner.

I.   By Points 1, 2 and 3, appellants maintain that, since plaintiffs sought cancellation of only certain portions of the two leases for inadequate exploration as to such certain portions, the trial court erred in asking the jury about exploratory operations by appellees on all portions of the two leases held by said appellees; that the trial court erred in asking the jury, in Question

No. 1, about exploratory activities on all the Ida Hendrick Lease (Lease "B"), owned by these two appellees; and in Question No. 6 in asking the jury about exploratory activities on all the T. G. Hendrick Lease (Lease "A"), owned by these two appellees.

In answering Questions 1 and 6, the jury found that appellees Pan American and Westbrook-Thompson, or their predecessors in title, had drilled or caused to be drilled, on Lease "A" and Lease "B", respectively, as many exploratory well or wells below the depth of 3,200 feet on those portions of the leases owned by them as a reasonable, prudent operator would have done under the same or similar circumstances.

■ On the date that the two basic leases were executed and delivered, the lessee, therein, J. W. Grant, owed to the lessor, T. G. and Ida Hendrick, only the obligations contained in the two leases, either expressly or by implication. The implied obligations of development and exploration owed by the lessee in each of these two leases was a single unified obligation affecting each lease as a whole. We believe the law of Texas is well settled that the lessor may not subdivide or separate the single unified obligation, and thus impose a subsequent burden on his lessee greater than the burden assumed by such lessee when he accepted the lease. Since the lessor may not, himself, arbitrarily separate or subdivide the express or implied obligations imposed on the lessee by the terms of the lease, it follows that such lessor would not be permitted to accomplish this indirectly, by the sale of the minerals to numerous parties in segregated tracts and parcels, and thus subdivide what was theretofore a single unified obligation affecting the lease as a whole, into countless separate obligations, each of which would be subject to further fractionization or division in the event of further sales by the purchasers thereof.

■■ We think it is equally well settled that the express and implied covenants contained in the lease are covenants running with the land and are imposed upon each taker of any part of the lease as a consideration of his holding it. In this respect, the express and implied covenants of the lease are severable, and impose upon the holder of each segregated part the obligation to reasonably explore and develop such segregated portions after production has been obtained on the lease. Cowden v. General Crude Oil Co., Tex.Civ.App., 217 S.W.2d 109; Cosden Oil Company v. Scarborough, 5 Cir., 55 F.2d 634; Cox v. Sinclair Gulf Oil Co., Tex.Civ.App., 265 S.W. 196.

■ Appellants concede that they have been unable to find any Texas authority in support of their contention that the lessees' development and exploratory obligations are divisible with respect to various portions of the lease. However, appellants have cited Perkins v. Mitchell, 153 Tex. 368, 268 S.W.2d 907, by our Supreme Court, which we think does no more than apply the rule announced above, to the effect that the express and implied covenants of the lease are severable, not at the option or election of the lessor or his assigns, but as a result of the subdivision of the lease by the lessee or his assigns into two or more segregated tracts or parcels. The covenants contained in the lease follow every part and parcel of the lease, and impose upon each holder a single unified obligation to reasonably explore and develop that portion of the lease held by him. In the Perkins case (supra), the original 203.4-acre lease had been divided by assignments into two tracts—a 40-acre tract owned by Shields, and a 163.4-acre tract owned by Mitchell. There had been sufficient development on Shields' 40-acre tract, but no development of any kind on Mitchell's 163.4-acre tract. The inquiry was not whether there had been sufficient development upon the entire original 203.4 acre lease, but was whether Mitchell had sufficiently developed the 163.4-acre portion of the original lease held by him. The court did not hold that Mitchell's obligation to

develop the acreage held by him was divisible as to particular parts or parcels of such 163.4-acre tract, but, we think, considered Mitchell's obligation as a single unified obligation affecting, as a whole, only that part of the original lease held by him.

Appellants also cite Willingham v. Bryson, 294 S.W.2d 421, by the Fort Worth Court of Civil Appeals. The pertinent holdings in this case have been overruled by the Supreme Court in Clifton v. Koontz, 325 S.W.2d 684, and we believe there exists no necessity to distinguish it from the facts of this case.

■ The two leases involved in this litigation are fully assignable, in whole or in part. When a portion of a lease, such as the leases here involved, is assigned, the obligations contained in the lease, either expressly or by implication, are imposed upon the taker of such segregated part. The obligation on the part of the holder is to the segregated portion of the lease, and is a single unified obligation affecting such segregated portion as a whole.

The obligations imposed by the terms of the lease upon the original lessee, or upon subsequent holders of various portions of such lease, can neither be enlarged nor diminished solely by virtue of a change or changes in the mineral and royalty ownership in the lands covered by such lease.

We hold that the trial court properly directed its inquiry in Question No. 1 to the whole of the segregated portion of Lease "B"; and in Question No. 2, to the whole of the segregated portion of Lease "A" owned by appellees, Pan American and Westbrook-Thompson; treating the obligations of these appellees with respect to the portions of each lease owned by them as a whole, imposing but a single unified obligation with respect to each lease. It is immaterial that appellants owned no minerals under some of the land, or, for other reasons, sought no cancellation on part of the lands held by appellees under each of the two leases. The obligation, if any, of appellees to "explore" affected the whole of the portions of each of the leases owned by them, and was indivisible. Appellants' Points 1, 2, and 3 are accordingly overruled.

II. The fourth point of error raised by appellants is the complaint that the trial court erred in confining all jury issues to exploratory activities below 3,200 feet.

Appellants sued to cancel, as to Lease "A", 900 specified acres, solely to depths below 3,200 feet, and 3,732 specified acres to all depths, both above and below 3,200 feet. As to Lease "A", appellants sued to cancel 4,790 specified acres solely to depths below 3,200 feet, and 8,780 specified acres to all depths.

The trial court confined the issues to exploration below 3,200 feet and, since the court rendered a take-nothing judgment, presumably it found, by implication, that there was no evidence of probative force to support or raise any issue of development or exploration as to any formation above 3,200 feet.

■ Rule 277, Texas Rules of Civil Procedure, authorizes the submission of a special issue only when raised by both the written pleadings and the evidence. While appellants' requested issue was raised by the pleadings, this alone is insufficient; it must also be raised by the evidence.

■ Where there is no evidence to raise a certain issue, or the evidence is insufficient to raise such issue, the issue should not be submitted. Premier Petroleum Co. v. Box, Tex.Civ.App., 255 S.W.2d 298 (err. ref.), 152 Tex. 321, 257 S.W.2d 105; Texas City Terminal Ry. Co. v. McLemore, Tex. Civ.App., 225 S.W.2d 1007; Gray County Gas Co. v. Oldham, Tex.Civ.App., 238 S.W. 2d 596.

■ In the trial of this case, appellants relied heavily on the Willingham case (supra), by the Fort Worth Court of Civil Appeals, which opinion has been rejected by the Supreme Court in Clifton v. Koontz

(supra), at least insofar as the Willingham case sought to draw a distinction between the implied covenant to "explore" and the implied covenant to "develop". There the Supreme Court, speaking through Justice Smith, said [325 S.W.2d 696]:

"We hold that there is no implied covenant to explore as distinguished from the implied covenant to conduct additional development after production in paying quantities has been obtained * * *. We agree that, under the terms of the lease, the lessee has the right to explore, but it does not necessarily follow that the lessee is under a duty to explore * * *."

Where there is no duty to explore, there can be no error in the trial court's refusal to submit issues inquiring about exploration to all depths on those portions of the two leases sought to be canceled to all depths, including depths above 3,200 feet.

This case having been plead and tried, and the issues submitted in substantial compliance with the rule announced in the Willingham case, we are of the opinion that appellants failed to plead or prove a cause of action. Consequently, had the trial court submitted all the issues in the exact manner requested by appellants, and even had all such issues been answered favorably to appellants, the jury verdict thereon would have been worthless, and could not have supported a judgment of cancellation of the part of the two leases held by appellees, either outright or conditionally. In such case, the failure of the trial court to submit appellants' requested special issues presents no reversible error.

■ Assuming as we do that there is no valid distinction between the implied covenant to "explore" and the implied covenant to "develop", the burden rests upon appellants to do more than merely prove that a ready, able and willing operator would drill, regardless of the certainty of profit. Appellants are required to prove:

(1) That the lessees failed to measure up to the standards of the prudent operator;

(2) That producing strata or horizons, which they contend should have been further explored or drilled, required additional wells;

(3) That strata or horizons other than those from which production is being obtained (on which further exploration or drilling is sought), exists in reasonable probability;

(4) That by the drilling of additional wells, there would be a reasonable expectation of profit, not only to the lessor, but also to the lessee. Clifton v. Koontz, Tex., 325 S.W.2d 684; Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576.

Appellants failed to discharge the burden of proof on these items, no testimony being offered on any of them. The court correctly entered a take-nothing judgment as to all the leasehold interests involved in this litigation above 3,200 feet. Appellants' fourth point is accordingly overruled.

■ III. Appellants' Points 5 and 6 are complaints that the trial court erred in refusing to permit the jury, anywhere in its charge, *to locate the exploratory wells*, if any, that a reasonable, prudent operator would drill on Lease "B"; and to *locate the exploratory wells*, if any, that such an operator would drill on Lease "A".

In the absence of any evidence of a reasonable expectation of profit from the drilling of additional exploratory wells at locations selected by the jury on each of the two leases, no duty is imposed on the lessee to continue the performance of the implied covenant to explore and develop the leased premises.

■ In addition, after having reviewed all the evidence, both pro and con, and considering only the evidence most favorable to appellants' contention, we are of the opinion that the evidence was insufficient to warrant the submission of any is-

sues requesting the jury to *locate* the exploratory wells, if any, that a reasonable, prudent operator would drill on either of the two leases.

Appellants' Points 5 and 6 are accordingly overruled.

Under the same grouping, by Points of Error 9 to 13, inclusive, appellants urge that the trial court erred in its refusal to submit appellant's requested Special Issues 1 through 5, on exploratory activities below 3,200 feet on Section 28, Block B–5, a part of Lease "B", owned by appellees; the refusal of the court to submit appellants' requested special issues on exploratory activities, both to all depths and below the depth of 3,200 feet, on various segregated, specifically described tracts of land under each of the two leases.

Had the court submitted the special issues requested by appellants, the result would have been to authorize the fragmentation of the over-all burden of the lessees to reasonably explore and develop that part of each lease held by them. It would have divided the single unified obligation owed by appellees with respect to all of Lease "A", into two or more separate groups, omitting entirely from the jury's consideration exploration and development operations by appellees on other parts of the same lease, under which appellants either owned no interest or had concluded, as to such omitted part, that appellees' implied duty to explore and develop had been satisfied. It would also have divided, in the same manner, the lessees' obligation on Lease "B" into at least three parts.

In the Koontz case (supra), the Supreme Court specifically pointed out that it did not have before it a factual situation where the lease covers several thousand acres, and an effort is being made to hold such vast acreage by showing production from a comparatively small area, nor did it have a situation where an unreasonably long time had elapsed since the last development of the leased premises. In its opinion, the court did not pass upon these questions. Such questions are, however, inescapably before us in the case now under consideration.

Out of the 10,240 acres covered by Lease "A", lessee-appellees own 5,685 acres; and, out of the 21,120 acres covered by Lease "B", lessee-appellees own 13,325 acres.

The evidence reflects that a total of approximately 80 wells have been drilled by or for the lessee-appellees, or their predecessors in title, on the acreage owned by them under Lease "A", and that approximately 235 wells have been drilled by or for said appellees, or their predecessors in title, on the acreage owned by them under Lease "B". Obviously, all and every part of each so vast a lease cannot be fully explored and completely developed in a single operation. After production, the lessee is required to reasonably develop the remainder of the lease held by him, and if he fails to do so, he may suffer the loss of all or part of his leasehold estate. We do not believe, however, in the absence of specific authority under the terms of the lease, that the lessors or mineral owners may direct the precise location of any well, or determine the order in which any portion of such lease or leases shall be developed, except where the failure to drill a particular well results in drainage of the leased premises.

The question for the jury is whether the lessee-appellees in this case, considering the development that has taken place to date, and the number of wells drilled on each particular lease down to the time of trial, have failed to reasonably develop those portions of each of the leases held by them, in the manner of a reasonable, prudent operator, with due regard and consideration to the interest of the lessors as well as the lessees. We do not believe that the lessors, or mineral owners, seeking to cancel a lease for alleged failure of the lessees to reasonably explore and develop the leased premises, regardless of the size of the particular lease, may

properly divide or compartment the lease, either vertically or horizontally, so as to exclude from the jury's consideration whatever measure of development and exploration, if any, such lessees may have contributed, down to the date of trial, to their total obligation to explore and develop the whole of the lease held by them. We find no error in the trial court's refusal to submit appellants' special requested issues and, accordingly, appellants' Points 9 through 13 are overruled.

■ IV. By Points 7 and 8, appellants contend that the trial court erred in framing Question No. 3 and Question No. 8 so as to compel the jury to find a "uniform depth" to which a reasonable, prudent operator would drill all exploratory wells, if any, on Lease "A" and Lease "B". We think such contention is, without merit. We have examined the issues complained of, and are of the opinion that such issues would have permitted the jury to find different depths for each of as many wells on the two leases as they believed a reasonable and prudent operator would drill. Points 7 and 8 are overruled.

■ V. By Points 14 and 15, appellants contend that the trial court erred in submitting Question No. 1 and Question No. 6, because lessee-appellees, having drilled so few wells, on so large a quantity of land, over a period of more than thirty years, had breached the covenant of exploration on both leases, as a matter of law, and appellants were entitled to a judgment of cancellation as prayed for.

We do not agree with appellants' contention. Some wells having been drilled on each of the leases held by appellees, a fact question is presented, which is within the exclusive province of the jury and may not be determined by the court.

■ We hold here, as was held by the Supreme Court in the Koontz case, supra, that there is no implied covenant to ex-

plore, as distinguished from the implied covenant to conduct, additional development after production in paying quantities has been obtained.

As we see it, from the manner in which this case was tried, and from the briefs, appellants not only contend that the implied covenant to "explore" is a separate and distinct obligation from that imposed by the implied covenant to "develop". They also contend: (1), that the obligation to "explore" can only be discharged by drilling activities, and there is no burden on appellants to show that such exploration could be conducted with reasonable expectation of profit; (2), that the obligation to "explore" may be separately imposed, not only as to separate strata or horizons, but also separately as to any specified area, and into as many separate areas, or portions of the lease, as plaintiff might elect to carve, and all without the necessity of crediting the lessee (whether such lessee has drilled 80 wells or 235 wells on the leasehold estate held by him) with whatever measure of exploration, if any, the lessee may have contributed toward the discharge of his total obligation to the whole of that part of each lease held by him.

■ We think "exploration" of the leased premises need not be confined exclusively to "drilling activities". In our opinion it is but one of several accepted methods by which oil, gas and other minerals may be located. The evidence reflects that a great deal of exploration of the two leases has been conducted by the appellees through the application of geophysical methods, beginning with the "torsion balance survey" in 1931, followed by other methods down through the years—the gravity meter survey in 1942; a magnetic survey in 1939; an aeromagnetic survey in 1950; a seismograph refraction survey in 1943; reflection seismic surveys, and by numerous experimental seismograph methods. These surveys indicate an almost continuous effort on the part of the appellees

to "explore" the lands held by them for the purpose of locating all of the oil and gas reservoirs, if any, underlying those areas of the two leases held by them.

Some of the geophysical work has been highly successful, and resulted in the location of the Emperior-Devonian and the Ellenburger fields on the Hendrick leases, upon which appellees have drilled producing wells. In addition, appellees, have, through the medium of farmout operations, dry hole money, bottom hole money, and other mediums, promoted and encouraged the drilling of wells by other operators on the acreage covered by the two leases, and on acreage off the two leases, but adjacent to or related to the area of the two leases held by them. We think the geophysical work conducted on these two leases, and appellees' contribution to exploratory wells on nearby lands, constitutes exploratory activities, just as does the drilling of exploratory wells, and may not properly be excluded from the jury's consideration in determining whether there has been a breach of the lessees' implied obligation to explore.

Appellants have called our attention to the recent case of Sinclair Oil & Gas Co. v. Masterson, 271 F.2d 310, by the Fifth Circuit, which case purports to distinguish and follow the Koontz case. We do not think this case has distinguished the facts of the Koontz case, nor do we believe it follows it. In the Masterson case, the court had before it 31 separate oil and gas leases, each entitled to enforcement with respect to the implied covenants to explore, develop and produce. The court there declined to enforce the implied covenants imposed by each of the leases, presumably on the ground that to do so would impose too heavy a burden on the defendant. Instead, the court treated the 31 separate leases as though they were a single lease covering 90,000 acres. In the absence of an agreement, or the consent of the parties, we know of no rule by which a Texas court would be authorized to take such ac-

tion. We decline to follow the Masterson case.

Appellants' Points 14 and 15 are overruled, and the judgment of the trial court affirmed.