**SUN EXPLORATION & PRODUCTION COMPANY and Amoco Production Company, Appellants,**

v.

**Ocie R. JACKSON, et al., Appellees.**

**No. 01–85–0240–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 14, 1986.
Rehearing Denied Nov. 20, 1986.

Leo J. Hoffman, Stuart C. Holliman, Strasburger & Price, Dallas, for appellants.

Dick Watt, John D. White, Watt & White, Houston, Ernest E. Smith, Austin, for appellees.

EVANS, C.J., and WARREN and SMITH, JJ.

EVANS, Chief Judge.

The appellants, Sun Exploration and Production Company and Amoco Production Company, brought this action for a declaratory judgment and an injunction against the appellees, the Jacksons. By their suit, Sun and Amoco sought to establish the validity of a 1938 oil, gas, and mineral lease covering the Jackson Brothers' 10,000–acre Ranch in Chambers County. The Jacksons, by counterclaim, sought cancellation of the lease, claiming that Sun and Amoco had failed to reasonably explore and develop the leased premises. Based on the jury's verdict, the trial court entered judgment for the Jacksons, unconditionally canceling the lease as to a portion of the leased premises and conditionally canceling other portions subject to Sun's and Amoco's right to earn back such portions by drilling additional wells.

In their first point of error, Sun and Amoco ("Sun") contend that the trial court erred in canceling the lease, arguing that Sun had no duty to "explore" (as distinguished from "develop") the leased premises. By their second and third points of

error, Sun challenges the legal and factual sufficiency of the evidence supporting the jury's finding that it failed to reasonably "explore" the leased premises.

The Jackson ranch, located between Anahuac and Winnie in Chambers County, is divided, north and south, by a farm-to-market road that crosses through the center of the property. Most of Sun's producing wells have been located north of this road, within a 1,123–acre tract known as the Oyster Bayou Field.

The lease in question was executed by Ocie Jackson and other members of the Jackson family, as lessors, and by Sun Oil Company, as lessee, on March 9, 1938. In 1941, Sun drilled and completed its Jackson No. 3 oil well, the discovery well for the Oyster Bayou Field. Since that time, Sun has drilled 64 additional wells on the 10,-000–acre leased premises, four of which resulted in the discovery of new deposits of hydrocarbons. At the time of trial, 37 wells were producing hydrocarbons, all producing from the Seabreeze Sands (found at depths below 8120 feet) in the Oyster Bayou Field.

Over the term of the lease, more than 110,600,000 barrels of oil, 110.3 billion cubic feet of gas, and 53,500 barrels of condensate have been produced from the field. The royalty on the total production has averaged more than $10,000 per day.

During the lease term, Sun has generated some 13 seismic surveys covering the leased premises. In 1979, Sun planned to conduct another seismic survey, on both the north and south portions of the lease, but was unable to negotiate a seismic agreement with the Jacksons. The Jacksons later denied Sun access to the leased premises, which resulted in the filing of this lawsuit. After obtaining a temporary restraining order, Sun completed its seismic program on the north part of the lease. When the restraining order expired, Sun did not seek an extension but left this action pending on the court's docket.

In 1981, while this action was pending, Sun drilled a new well north of the road and attempted to obtain production in the Vicksburg Sands at a depth of 14,500 feet. That effort was unsuccessful so Sun eventually completed the well in the Seabreeze Sands. In 1982, Sun started another well south of the road to penetrate the Vicksburg Sands. But on the second day of the work, Sun's crew was evicted by the Jacksons, and Sun again sought and obtained temporary injunctive relief. Sun thereafter drilled that well to a depth of 12,000 feet and completed the well as a gas well in the Hackberry Sands. However, the well was soon depleted and was later abandoned.

In 1984, this suit was tried on its merits. The court submitted two special issues to the jury regarding the Jacksons' contentions that Sun had failed to "explore and develop" the leased premises. The jury answered the first in favor of Sun, and the second in favor of the Jacksons. On the basis of the jury's verdict, the trial court entered judgment for the Jacksons.

■ Unless an oil, gas, and mineral lease contains a stipulation to the contrary, the lessee usually assumes a number of implied covenants in favor of the lessor with reference to the development and operation of the leased premises. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563 (Tex. 1981). The standard for testing the lessee's performance of such implied covenants is that of a reasonably prudent operator under the same or similar facts and circumstances. *Id.* at 567–68.

■ One of the generally recognized implied covenants is the duty to reasonably develop the leased premises after production is obtained. *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684 (1959). Thus, even though a lease may be held by production, the lessee is usually obligated to conduct further development operations on the leased premises if such operations would result in a benefit or profit for both the lessor and the lessee. *Id.* 325 S.W.2d at 693. But this obligation is measured by the standard of reasonable diligence, and unless there is a reasonable expectation of profit to both the lessee and lessor, the

lessee is not required to act. *Id.* at 695; *Labbe v. Magnolia Petroleum Co.,* 350 S.W.2d 873, 878 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.).

In this case, both sides agree that the Jackson lease carried with it the implied covenant of reasonable development after production. The disputed issue is whether Sun's duty to "develop" included the obligation to drill "exploratory" wells to test other than "known producing" formations of the lease.

In support of its position that it had no such obligation, Sun relies principally on the holding of the Texas Supreme Court in *Clifton v. Koontz,* 325 S.W.2d 684. There, the court said "there is no implied covenant to explore as distinguished from the implied covenant to conduct additional development after production in paying quantities has been obtained." *Id.* at 696. This declaration of the law was repeated in *Shell Oil Co. v. Stansbury,* 401 S.W.2d 623 (Tex.Civ.App.—Beaumont), *writ ref'd n.r.e.,* 410 S.W.2d 187 (Tex.1966), and in *Felmont Oil Corp. v. Pan American Petroleum Corp.,* 334 S.W.2d 449 (Tex.Civ. App.—El Paso 1960, writ ref'd n.r.e.). *But compare—Sinclair Oil & Gas Co. v. Masterson,* 271 F.2d 310 (5th Cir.1959), *cert. denied,* 362 U.S. 952, 80 S.Ct. 864, 4 L.Ed.2d 870 (1960).

In the instant case, the evidence shows three types of wells being drilled on the Jackson lease. Initially, there are the speculative "wildcat" wells, drilled to test unproven sands in a "new field." (The lessee's decision to drill a "wildcat" well is not necessarily based on a "prudent operator's reasonable expectation of profit.") Next, after the discovery of production in paying quantities, are the "additional development" wells, drilled to tap into and further develop the producing formation found in the Oyster Bayou Field. Finally, there are "exploratory" development wells, drilled to test potentially producing formations, outside the Oyster Bayou Field, based on data obtained during earlier drilling and seismic operations. (The decisions to drill both categories of development wells would neces-

sarily be based on a "reasonable expectation of profit to the lessor and the lessee.")

■ We agree with Sun that it was not required to drill exploratory "wildcat" wells, i.e., speculative wells, that did not offer a reasonable expectation of profit to a reasonably prudent operator under the same or similar facts and circumstances. But we do not agree that Sun necessarily met its obligation of continued development by merely drilling additional wells into the one "known producing" formation in the Oyster Bayou Field.

The two issues submitted to the jury were as follows:

Special Issue No. 1:

Do you find from a preponderance of the evidence that Sun has failed to reasonably develop the Jackson Lease?

Answer "Sun has failed" or "Sun has not failed" in the space provided.

Answer: Sun has not failed.

In answering Special Issue No. 1, you are instructed that the term "to reasonably develop" means the development which a prudent operator would do with respect to any known producing formation of the lease. In this context, reasonable development may include the drilling of additional wells into any such producing formation. A prudent operator will undertake to drill additional wells into such producing formation only if there is a reasonable expectation that the proceeds, if any, from the production obtained, if any, as a result of such drilling will exceed the cost of drilling and operating the well and still produce a reasonable profit for the operator, bearing in mind the interests of both the Lessors and Lessee.

Special Issue No. 2:

Do you find from a preponderance of the evidence that Sun has failed to reasonably explore the portions of the Jackson Lease which lie outside the Oyster Bayou Field?

Answer "Sun has failed" or "Sun has not failed."

Answer: Sun has failed.

In answering Special Issue No. 2, you are instructed that Sun must conduct itself as a reasonable and prudent operator would while exercising due diligence under the same or similar circumstances, with a reasonable expectation of profit, considering the interests of both the Lessors and the Lessee.

There is no complaint before us with respect to the form of the issues submitted. Therefore, any such complaint has been waived. Tex. R. Civ. P. 414; *American General Fire & Casualty Co. v. Weinberg*, 639 S.W.2d 688 (Tex.1982). In construing the jury's verdict, we must consider its findings in light of the entire charge, and if possible, make a reasonable interpretation that will support the verdict. *Texas Indemnity Insurance Co. v. Staggs*, 134 Tex. 318, 134 S.W.2d 1026 (1940). In aid of our construction, we are permitted to refer to the pleadings, *Rountree Motor Co. v. Smith Motor Co.*, 109 S.W.2d 296 (Tex.Civ. App.—Beaumont 1937, writ dism'd), and to the evidence bearing on the particular issues. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731 (1941). If the submitted issues are ambiguous, we must adopt that interpretation which is the more reasonable. *First National Bank v. Rush*, 246 S.W. 349 (Tex. Comm'n App.1922).

When we consider the issues together, and in light of the court's instructions, the pleadings, and the evidence, we find that the words "explore" and "develop" were used interchangeably, insofar as those words relate to Sun's activities under the lease. Under the court's instructions, the word "develop" as used in Special Issue No. 1, obviously refers to the drilling of additional wells to test the one "known producing" formation found in the Oyster Bayou Field. The word "explore", as used in Special Issue No. 2, obviously refers to the drilling of additional wells outside the Oyster Bayou Field to test potentially producing formations.

The jury answered the first special issue in Sun's favor, showing that it was not persuaded, by a preponderance of the evidence, that Sun had failed to reasonably develop "known producing" formations. But that issue related only to the "additional development" wells drilled to test the Seabreeze Sands *inside* the Oyster Bayou Field. In response to the second issue, the jury affirmatively found that Sun had *not* acted as a reasonable prudent operator in drilling additional wells to find production *outside* the Oyster Bayou Field.

Contrary to Sun's argument, the second issue did not inquire whether Sun had failed to drill exploratory "wildcat" wells outside the Oyster Bayou Field. That issue, when considered with the court's charge, inquired whether Sun had failed in its duty, as a reasonable and prudent operator, to drill additional "exploratory" development wells to test other than known producing formations outside the Oyster Bayou Field. The jury's response to the second issue is an adequate basis for the trial court's determination that Sun failed in its duty to reasonably develop the leased premises.

We overrule Sun's first point of error.

We next consider Sun's second point of error. Here, Sun challenges the legal sufficiency of the evidence to support the jury's finding to the second special issue, that Sun failed to reasonably explore that portion of the leased premises lying outside the Oyster Bayou Field.

This issue was the subject of considerable debate between expert witnesses produced by both sides. The Jacksons' chief witness was Mr. Gene Von Tungeln, an oil and gas consultant, who expended some 1400 hours making an evaluation of the lease and studying Sun's activities. Von Tungeln testified that, based on his evaluation and study, he had identified five drilling "prospects" that a reasonable and prudent operator would have drilled immediately. One of these prospects was in the Seabreeze Sands, one in the Hackberry, and three in the Vicksburg. He said the Hackberry called for a development well, because it would test a known producing sand; that the other four prospects were

all "exploratory" wells to test the Seabreeze and Vicksburg formations outside the Oyster Bayou Field. He concluded that, in his opinion, Sun had not acted as a reasonable and prudent operator in exploring or developing the lease outside the known productive formations of the Oyster Bayou Field.

■ Although Von Tungeln's testimony was sharply contested, it was not conclusively refuted. We hold that it is legally sufficient, when considered in the light of all the circumstances presented by the evidence, to support a finding that Sun did not reasonably explore that portion of the leased premises lying outside the Oyster Bayou Field. Therefore, the trial court properly submitted the issue to the jury. *See Air Conditioning v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422 (1952).

We accordingly overrule Sun's second point of error.

■ Sun also challenges the factual sufficiency of the evidence to support this finding. This requires that we review the entire record, considering both the evidence in support of and against the jury's finding. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Sun first contends that its expert testimony showed that Von Tungeln's Seabreeze prospect is based on incorrect data and, therefore, is invalid. Sun points to testimony showing that two faults separated the prospect from the Oyster Bayou Field, the only known producing reservoir in that area, and it argues that well log data showed the Seabreeze formation at a higher elevation than Von Tungeln had used in his interpretation. Thus, Sun argues there could be no "structural closure" at the location of the Seabreeze formation, a necessary prerequisite for a "hydrocarbon trap." (The Jacksons counter this argument by reference to testimony tending to show that there were *two* elevations of Seabreeze Sands, so that Von Tungeln's mapping was correct.)

Sun next claims that Von Tungeln's testimony does not support his conclusion that a reasonable and prudent operator would drill any of the three Vicksburg prospects.

As to the north Vicksburg prospect, Sun contends that Von Tungeln erroneously interpreted the location of the controlling fault in the area, rendering the prospect "highly questionable."

As to the middle Vicksburg prospect, Sun argues that the Vicksburg Sand "was never known to exist" in that portion of the lease south of the farm-to-market road. In fact, as Sun points out, the prospect is located very near the location of an expensive dry hole drilled by Sun. That circumstance, Sun contends, coupled with the lack of definitive seismic data showing where the Vicksburg Sand might be found, could not serve as the basis for a reasonable and prudent operator drilling an exploratory well.

As to the south Vicksburg prospect, Sun contends that Von Tungeln's own testimony shows that it was not a real prospect, but only a "lead", which Von Tungeln would not recommend drilling at that time.

Finally, Sun points to Von Tungeln's classification of the Hackberry prospect as a "development prospect" and argues that it is not relevant to the finding because it would not call for the drilling of an "exploratory" well.

In considering a factual sufficiency question, we are required to consider the evidence in its entirety and in a light most favorable to the jury's finding. *Leatherwood v. Roberts*, 320 S.W.2d 381 (Tex.Civ. App.—Waco 1959, no writ). Under that standard of review, we find that the jury's finding is not so contrary to the overwhelming preponderance of the evidence as to be clearly wrong. *See Royal v. Cameron*, 382 S.W.2d 335 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.); *Phipps v. Evans*, 262 S.W.2d 430 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.).

Based on Von Tungeln's testimony and the other evidence before it, the jury could reasonably have inferred that Sun had not

acted as a reasonable and prudent operator in developing the leased premises. Von Tungeln testified that most of Sun's seismic work was of poor quality and that all "usable" seismic work was performed after the commencement of this litigation. Von Tungeln criticized Sun's failure to have a systematic program for seismic review, and he concluded that Sun's last two wells were both drilled at the wrong geological location. As a result, he said, both wells were expensive dry holes. He was also critical of Sun's use of a 30% return on investment formula in deciding whether or not to drill additional wells, stating that this standard was higher than that generally used in the oil and gas industry. He also testified that Sun had not acted as a reasonable and prudent operator in its treatment of farm-out requests, pointing out that Sun had never, in 47 years, granted a farm-out on the Jackson lease. Von Tungeln, in effect, concluded that because of Sun's failure to diligently explore and develop good prospects and leads, as a reasonable and prudent operator would have done under the same or similar circumstances, 78% of the 10,000-acre lease had never been properly developed.

Although Von Tungeln's testimony and his conclusions were sharply contested, the record does not demonstrate that the evidence offered by the Jacksons is so factually insufficient that the jury's finding is manifestly wrong. Therefore, we may not disturb its finding. *See Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815 (1959).

We next consider Sun's contention, under its fourth and fifth points of error, that the trial court erred in rendering a judgment that unconditionally canceled the Jackson lease as to part of the leased premises and conditionally canceled it as to other portions.

The trial court's judgment unconditionally canceled those portions of the lease lying south of the farm-to-market road and west of Oyster Bayou, and conditionally canceled the lease for all land lying underneath the Oyster Bayou Field as to all depths below the depth of 8480 feet. The judgment provides that Sun may drill on the portions of the lease subject to conditional cancellation, and that if Sun drills and completes a well capable of producing in paying quantities on any such portion of the lease as of December 9, 1985, the lease will not be canceled as to such portion which is in good faith allocated to a pro ration unit on file with the Railroad Commission attributable to such well, or if such well does not have an assigned pro ration unit, into that acreage around the well bore in the form of a square as nearly as practicable; (1) if the deepest strata drilled by such well is at a depth of 9,000 feet below the surface of the earth or shallower, 40 acres down to a depth of 9,000 feet below the surface; (2) if the deepest strata drilled by such well is at a depth greater than 9,000 feet but less than 15,000 feet below the surface, 320 acres down to a depth of 15,000 feet below the surface; and (3) if the deepest strata drilled by such well is at a depth of 15,000 feet below the surface of the earth or deeper, 640 acres down to the deepest producing interval of such well.

We first consider that portion of the trial court's judgment unconditionally canceling the lease as to lands lying south of the farm-to-market road and west of the Oyster Bayou Field.

■ A lessee's breach of the implied covenant to reasonably develop an oil and gas lease does not usually authorize a decree of unconditional cancellation, *W.T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27 (1929), and the lessor's usual remedy is an action for damages. But where extraordinary circumstances are shown and there can be no other adequate relief, a court of equity may cancel the lease "in whole or in part." *Id.* 19 S.W.2d at 29.

■ Unless the lessee, by express intention or through protracted delay in exploration, has abandoned the implied covenant of reasonable development, the remedy of cancellation should be conditionally granted. *See Slaughter v. Cities Service Oil Co.,* 660 S.W.2d 860 (Tex.App.—Amarillo 1983, no writ); *Wes-Tex Land Co. v. Sim-*

*mons,* 566 S.W.2d 719 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); 5 H. Williams & C. Meyers, *Oil and Gas Law* sec. 844.1 (1964).

 Recognizing the rule that unconditional cancellation should only be granted in extraordinary circumstances, we conclude that the trial court did not abuse its discretion in granting that relief in this case. Based on the Jacksons' evidence from which it might be inferred that Sun made no effort to develop the lease before institution of litigation, and Sun's own evidence, from which the trial court could reasonably have decided that Sun had no present intent to conduct further drilling operations outside the Oyster Bayou Field, the trial court was justified in deciding that a conditional decree would be futile. Based on the circumstances presented to it, the trial court could reasonably have concluded that Sun had expressly disclaimed any interest in further developing the lease outside the Oyster Bayou Field, and that it would be useless to require Sun to abide by a "reasonable development" program on the premises south and west of the Oyster Bayou Field. We accordingly affirm that part of the trial court's judgment granting unconditional cancellation of the lease as to a portion of the leased premises.

 Sun also complains of the conditional decree of cancellation, arguing that the court's specified conditions are unreasonable. Sun asserts that the court's decree would require it, within the short time period specified, to drill 75 wells on that part of the lease and to complete every well as a producer in order to perpetuate the lease as to those deeper formations. We agree that this portion of the decree imposes an unreasonable burden on Sun. Accordingly, we reverse that portion of the decree and remand the cause to the trial court so that it may fashion a decree which will bear a reasonable relationship to Sun's ability, as a reasonable and prudent operator, to further develop that portion of the lease lying beneath the Oyster Bayou Field. *See, e.g., Sinclair Oil & Gas Co. v. Masterson,* 271 F.2d 310 (5th Cir.1959) (affirming a 5–year program which required

drilling the first year and provided for optional surrender of undrilled areas during the remaining four years), *cert. denied,* 362 U.S. 952, 80 S.Ct. 864, 4 L.Ed.2d 870 (1960).

 Sun's last point of error complains that the trial court erred in awarding attorney's fees to the Jacksons and in failing to award attorney's fees to Sun. We overrule this contention. The trial court did not abuse its discretion in awarding attorney's fees to the prevailing party under the judgment. *See Verble v. Coffman,* 680 S.W.2d 69 (Tex.App.—Austin 1984, no writ); Ch. 314, sec. 1, 1979 Tex. Gen. Laws 718, *repealed by* ch. 959, sec. 9(1), 1985 Tex. Gen. Laws 7043, 7218; Ch. 190, sec. 1, 1981 Tex. Gen. Laws 455, *repealed by* ch. 959, sec. 9(1), 1985 Tex. Gen. Laws 7043, 7218.

We reverse that portion of the trial court's judgment decreeing conditional cancellation of the lease as to portions of the leased premises, and remand that matter to the trial court for entry of an appropriate decree consistent with this opinion; in all other respects the trial court's judgment is affirmed.

Costs of appeal are adjudged against Sun Exploration & Production Company and Amoco Production Company.

Justices Warren and Smith also sitting.