**SUN EXPLORATION AND PRODUCTION COMPANY, et al., Petitioners,**

v.

**Ocie R. JACKSON, et al., Respondents.**

No. C–6000.

Supreme Court of Texas.

Oct. 25, 1989.

Rehearing Overruled Feb. 21, 1990.

Leo J. Hoffman, Stuart C. Hollimon, Dallas, James W. McCartney, Thad T. Dameris, N. Fred Crowder, Houston, for petitioners.

Dick Watt, John White, Houston, Ernest E. Smith, III, Austin, for respondents.

### OPINION ON MOTION FOR REHEARING

RAY, Justice.

After reargument, our prior judgment and opinions dated July 13, 1988 are withdrawn, and the following opinion is substituted.

The issue in this cause is whether there exists in Texas oil and gas leases an implied covenant to explore, independent of the implied covenant of reasonable development. Sun Exploration and Production Company (the successor in interest to Sun Oil Company) and Amoco Production Company (together referred to as Sun) brought an action for declaratory judgment and an injunction against the Jacksons. Sun sought to establish the validity of an oil, gas, and mineral lease covering a 10,000 acre tract in Chambers County, known as the Jackson Brothers Ranch. Sun also sought a permanent injunction enjoining the Jacksons from denying Sun Oil entrance onto the leased property. The Jacksons counterclaimed alleging breach of im-plied covenants to reasonably develop and explore the entire lease, and seeking cancellation of the lease. Based on the jury's findings, the trial court rendered judgment for the Jacksons, unconditionally cancelled that portion of the lease on which Sun had not drilled extensively and conditionally cancelled the lease below the depth to which Sun had drilled (8480 feet) in a developed area. The court of appeals affirmed the unconditional cancellation and reversed and remanded as to the conditional cancellation. 715 S.W.2d 199, rehearing overruled, 729 S.W.2d 310. We reverse the judgment of the court of appeals and remand for the trial court to determine attorney's fees and whether Sun and Amoco may be entitled to any injunctive relief.

In March of 1938, Ocie R. Jackson and other interested members of the Jackson family executed an oil, gas, and mineral lease to Sun covering the 10,000 acres of the Jackson Brothers Ranch. Sun owns a majority of the working interest under the lease. Amoco owns a small minority of the working interest, which it acquired many years ago. The Jacksons own the entire surface and retain a majority of the outstanding nonparticipating royalty interest. In 1941, Sun drilled its third well on the Jackson Brothers Ranch, resulting in the discovery of a reservoir commonly known as the Oyster Bayou Field. Production from that reservoir continues to this date. The Oyster Bayou Field produces from a small part of the 10,000 acre tract. The Jacksons complain that only the Oyster Bayou Field on the Jackson lease has been developed by Sun. The Jacksons assert that Sun has neglected to explore and develop the larger remaining part of the lease.

Sun and Amoco sued to enjoin the Jacksons from interfering with their right to enter the lease and the Jacksons counterclaimed against Sun and Amoco for breach of implied covenants. The jury found that Sun had not failed to reasonably develop the Jackson lease, but that Sun had failed to reasonably explore the portions of the lease that were outside the Oyster Bayou Field. Based on the jury's verdict, the trial court rendered judgment for the Jacksons.

The judge determined the remedy: unconditional cancellation of one portion of the lease and conditional cancellation of another portion of the lease.

There are three generally recognized implied covenants in Texas: "(1.) to develop the premises, (2.) to protect the leased premises, and (3.) to manage and administer the lease." *Amoco Product Co. v. Alexander*, 622 S.W.2d 563, 567 (Tex.1981). The Jacksons would like us to recognize an implied covenant of further exploration.

■ This court has held that no implied covenant of further exploration exists independent of the implied covenant of reasonable development. *Clifton v. Koontz*, 160 Tex. 82, 98, 325 S.W.2d 684, 696 (1959). In *Clifton*, the court held that the covenant of reasonable development encompassed the drilling of all additional wells after production on the lease is achieved. 160 Tex. at 96–97, 325 S.W.2d at 695–96. By "additional wells" the court meant both additional wells in an already producing formation or stratum, or additional wells in "that strata different from that from which production is being obtained." 160 Tex. at 96, 325 S.W.2d at 695. The critical question was whether the lessor could prove a reasonable expectation of profit to lessor and lessee. *See, e.g., Atlantic Richfield Co. v. Gruy*, 720 S.W.2d 121, 122 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (no reasonable expectation of profit in development, i.e. exploration, below 3,750 feet); *Felmont Oil Co. v. Pan Am. Petroleum Corp.*, 334 S.W.2d 449, 455 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.) (no evidence of a reasonable expectation of profit to drill exploratory wells). Therefore, under *Clifton* if a party could prove that a reasonably prudent operator would have drilled the well, that well fell within the implied covenant of reasonable development, without regard to whether the well was classified as exploratory or developmental.

■ In answer to question one, the jury found that Sun did not fail to reasonably develop the Jackson lease. This finding is dispositive of the case. The law of Texas does not impose a separate implied duty upon a lessee to further explore the lease-hold premises; the law recognizes only an implied obligation to reasonably develop the leasehold. Because the jury determined that Sun has not failed to reasonably develop the Jackson lease, the court of appeals should have rendered judgment for Sun. In failing to do this, the court erred.

In analyzing the issues and instructions submitted to the jury, the court of appeals found:

(1) The terms "explore" and "develop" as they appear in the trial court's questions and instructions were used interchangeably;

(2) Question one refers only to the drilling of additional wells to test the formation situated inside the Oyster Bayou Field; and

(3) Question two refers to the drilling of additional wells to test potentially productive formations situated outside the Oyster Bayou Field.

715 S.W.2d at 203.

This analysis distorts the meaning of the questions and instructions which were submitted to the jury. The court of appeals found that question one and the instruction that accompanied it, limited the jury's attention to the matter of drilling additional development wells to test the formation situated inside the Oyster Bayou Field. In this, the court was mistaken. The language of question one is in no way limited to activity within the confines of the Oyster Bayou Field. Instead, the issue inquires whether Sun "failed to reasonably develop the Jackson lease," not merely the Oyster Bayou Field.

Likewise, the language of the instruction which accompanied question one does not limit the jury's attention to the Oyster Bayou Field. The relevant language of the instruction advises the jury that:

the term 'to reasonably develop' means the development which a prudent operator would do with respect to any known producing formation of the lease.

Contrary to the finding of the court of appeals and the position advanced by the Jacksons, the quoted language of the instruction does not limit the jury's attention

to the Oyster Bayou Field; it asks the jury to focus upon *any* known producing formation of the lease. The analysis offered by the court of appeals and the Jacksons suggests that the language of this instruction asked the jury to focus only upon formations which are *currently* producing hydrocarbons on the Jackson lease, but this is not what the language of this instruction does.

The instruction is worded broadly and allows the jury to include in its deliberations actions taken with regard to any formation on the lease that is currently producing or that has been determined to be productive of hydrocarbons but is not producing now. In addition, the wording of this instruction allowed the jury to consider Sun's actions over the years in discovering, producing and depleting several one-well reservoirs located outside the Oyster Bayou Field. Indeed, it was essential to word the instruction so as to permit such matters to be considered by the jury because the language of question one required the jury to determine whether Sun had reasonably developed the entire lease. Thus, in connection with question one, the jury was instructed to consider all activities undertaken by Sun with regard to the development of any formation capable of producing hydrocarbons, situated anywhere on the lease, and not simply those activities conducted by Sun inside the Oyster Bayou Field.

For these same reasons, the construction of question two proposed by the court of appeals as focusing the jury's attention on the reasonableness of Sun's drilling activities outside the Oyster Bayou Field is likewise erroneous. In reality, these two questions, when considered together, first asked the jury to determine whether Sun had reasonably *developed* the entire Jackson lease. In answering this question, the jury was required to consider activities affecting any formation on the Jackson lease known to be capable of producing hydrocarbons, whether such formations were currently producing or not. These issues then asked the jury to determine whether Sun had reasonably *explored* all of those portions of the Jackson lease not known to

be capable of producing hydrocarbons. The construction of the jury's answers to these two questions advanced by the court of appeals has created an ambiguity in the jury's verdict when, in fact, none exists. The clear and unambiguous finding of the jury is that Sun has reasonably developed the entire Jackson lease.

Having determined there is no implied covenant to explore, independent of the implied covenant of reasonable development, and that the jury found that no breach of the covenant to reasonably develop occurred, we hold the lease remains valid. It is thus unnecessary for us to pass upon the validity of the remedies of conditional and unconditional cancellation.

We affirm that part of the court of appeals judgment that overrules Sun's motion for remand of the cause for consideration of disqualification or recusal.

The judgment of the court of appeals is reversed and the cause remanded to the trial court for a determination of attorney's fees and injunctive relief, to which Sun and Amoco may be entitled.

SPEARS, J., files a concurring opinion in which COOK, J., joins.

GONZALEZ, J., files a concurring opinion in which DOGGETT, J., joins.

SPEARS, Justice, concurring.

The court does not address the contention of Sun Exploration and Production Company that the trial judge should have recused himself because of his relationship with the Jacksons' attorney and the Jacksons themselves. Although the court reverses the trial court's judgment and thus corrects any harm that may have been caused by the trial judge's lack of impartiality, the court should not, by its silence, place its stamp of approval on the trial judge's failure to recuse himself. For this reason, I concur separately.

The trial judge, Carroll Wilborn, Jr., was the first cousin to an attorney for the Jacksons and was related to each one of the Jacksons—some twenty named parties—in the fourth degree. The potential for bias

and partiality is readily apparent when a judge is related to a party or the party's attorney. *Newcome v. Light,* 58 Tex. 141, 145 (1882); *see also* Annotation, *Relationship to Attorney as Disqualifying Judge,* 50 A.L.R.2d 143, 144–45 (1956 & Supp. 1987). Judge Wilborn's significant relationship with both the Jacksons and their attorney gives rise to serious concerns about his impartiality. The potential for bias and favoritism under these circumstances taints the trial court's judgment and raises legitimate questions about the favorable relief granted to the Jacksons and about the substantial award of attorney's fees.

Public policy demands that the judge who sits in a case act with absolute impartiality. *Pendergass v. Beale,* 59 Tex. 446, 447 (1883). Beyond the demand that a judge *be* impartial, however, is the requirement that a judge *appear to be* impartial so that no doubts or suspicions exist as to the fairness or integrity of the court. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). The judiciary must strive not only to give all parties a fair trial but also to maintain a high level of public trust and confidence. *Indemnity Ins. Co. v. McGee,* 163 Tex. 412, 356 S.W.2d 666, 668 (Tex.1962). The legitimacy of the judicial process is based on the public's respect and on its confidence that the system settles controversies impartially and fairly. Judicial decisions rendered under circumstances that suggest bias, prejudice, or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the very principles on which the judicial system is based. The judiciary must be extremely diligent in avoiding any appearance of impropriety and must hold itself to exacting standards lest it lose its legitimacy and suffer a loss of public confidence. Although the court reverses the trial court's judgment, it remains silent on the recusal question and thus fails to cure the perception of unfairness.

Texas Rule of Civil Procedure 18b mandates that "judges *shall* recuse themselves in proceedings in which their impartiality might reasonably be questioned." The combination of familial relationships involved in this case clearly brings the trial judge within the ambit of Rule 18b. In order to avoid the appearance of impropriety, Judge Wilborn should have recused himself because the familial relationships cast a reasonable doubt on his impartiality.[1]

Texas Rule of Civil Procedure 18a permits a party to file a motion at least 10 days before trial, stating grounds as to why the judge before whom the case is pending should not sit in the case. The rule, however, does not contemplate the situation in which a party does not know of the disability of the judge to sit in the case until after trial has been completed. *See also* Sparks, *Judicial Recusal: Rule 18a— Substance or Procedure,* 12 St. Mary's L.J. 723 (1981). The Jacksons have argued for a strictly mechanical application of Rule 18a. They point out that no motion to recuse was timely filed and urge that Sun therefore waived any complaint regarding the trial judge's qualifications to sit in the case. However, Sun did not know of the trial judge's relationship with the Jacksons and their attorney and therefore Sun could not have waived its right to request recusal. *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396, 401 (Tex.1967) (defining waiver as an intentional relinquishment of a known right). The relationship of the judge to the Jacksons and their attorney was never revealed during trial and there was nothing to put Sun on inquiry as to the relationship.

---

1. Rule changes proposed for 1990, if adopted, would make even clearer the necessity of recusal under these circumstances. The proposal for Rule 18b(2) reads: "A judge shall recuse himself in any proceeding in which ... he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person ... is acting as a lawyer in the proceeding." Supreme Court Advisory Committee, *Report to Supreme Court of Texas* (Aug. 25, 1989).

The trial judge and the Jacksons' attorney [2] should have disclosed the familial relationships. Failing to do so, it is they who should suffer the consequences and not Sun. Therefore, on remand, Sun should be permitted to present a motion for recusal pursuant to Rule 18a.

COOK, J., joins in this concurring opinion.

GONZALEZ, Justice, concurring.

I concur with the court's opinion and judgment, but write separately [1] to respond to Justice Spears' concurring opinion wherein he presumes bias from the mere fact that a familial relationship exists between the trial judge and both an attorney and certain parties to this case. Under current law and the law at the time the case was tried, Judge Wilborn was not precluded from presiding in this case. He was certainly not disqualified nor was he necessarily required to recuse himself. Disqualification and recusal are not synonymous; the former is based on the constitution and the latter is based on statutes and rules. *See* Kilgarlin & Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599 (1986) [hereinafter Kilgarlin].

The *only* grounds for judicial disqualification are enumerated in Tex. Const. art. V, § 11. *Taylor v. Williams*, 26 Tex. 583 (Tex.1863); *Love v. Wilcox*, 119 Tex. 256, 28 S.W.2d 515 (1930). *See also* Calvert, *Disqualification of Judges*, 47 Tex. B.J. 1330, 1337 (1984). The constitution provides for disqualification when a judge is related to a party in a case within a degree prescribed by law. The legislature has fixed that relationship as being within the third degree of affinity or consanguinity. Tex. Gov't Code Ann. § 21.005 (Vernon 1988).

Judge Wilborn was related to the plaintiffs in this case by the fourth degree of consanguinity; he could therefore hear this case and remain within statutory and constitutional parameters. Granted, Judge Wilborn was a first cousin of one of the plaintiffs' attorneys, but the attorney was not a "party" for purposes of disqualification.[2] *See Winston v. Masterson*, 87 Tex. 200, 27 S.W. 768 (Tex.1894); *see also* Kilgarlin, at 606; *but cf. Indemnity Ins. Co. of North America v. McGee*, 163 Tex. 412, 356 S.W.2d 666 (1962) (workers' compensation exception to the rule that an attorney is not a party).

Justice Spears states that Judge Wilborn should have recused himself. The basis for this attack on the trial judge's impartiality is Judge Wilborn's "favorable relief granted." At 206. Significantly, the court of appeals affirmed that judgment, stating "[b]ased on the circumstances presented to it, the trial court could reasonably have concluded that Sun had expressly disclaimed any interest in further developing the lease outside the Oyster Bayou Field." 715 S.W.2d at 206. Are we now to question the impartiality of the chief justice of that court who authored its opinion, or the two other justices of that court who joined with him to make the opinion unanimous?

Further, Judge Wilborn's conduct did not expressly contravene the Code of Judicial Conduct as it existed at all times pertinent to this trial. It is quite obvious that in adopting the Code of Judicial Conduct, we made a conscious decision that judges would not be recused solely because of

---

2. Under an amendment to the Government Code, effective September 1, 1989, "[a]n attorney may not appear before a judge or justice in a civil case if the attorney is related to the judge or justice by affinity or consanguinity within the first degree." Tex. Gov't Code § 82.066, ch. 866, § 4, 1989 Tex.Sess. Law Serv. 3857 (Vernon).

1. Much of this opinion was originally drafted by former Justice William Kilgarlin. Justice Kilgarlin left the court prior to our ruling on the motion for rehearing. Because of my agreement with much of what he said, I have adopted

substantial portions of his concurrence as my own.

2. The legislature has recently enacted an amendment to the Government Code which provides that an attorney may not appear before judges who are related by affinity or consanguinity within the first degree. Tex. Gov't Code § 82.066, Ch. 866, § 4, 1989 Tex.Sess. Law Serv. 3857 (Vernon). Judge Wilborn is a second degree relative of the attorney in this case, and under this new statute, the attorney can properly appear before the judge.

their relationship to attorneys in the lawsuit.

Justice Spears chastizes the trial judge, writing, "Judge Wilborn should have recused himself because the familial relationships cast a reasonable doubt on his impartiality." At 206. For support, however, he footnotes a *suggested* rule change which will not take effect, if it takes effect at all, until 1990. At 206, n. 1. Unless Judge Wilborn is expected to be a soothsayer, he. should not have to anticipate the future and abide by rules which have not been adopted.

Also, Justice Spears makes unauthorized findings of fact that "Sun did not know of the trial judge's relationship with the Jacksons and their attorney ..." and that "there was nothing to put Sun on inquiry as to the relationship." At 3. The evidence developed in the record, however, would also support the position of the Jacksons. After an almost fifty-year relationship between Sun Oil and the Jacksons in a county as small as Chambers, it is doubtful that Sun Oil did not know of the kinship of Guy C. Jackson, III, a former Chambers County judge, and his cousin, district judge and former district attorney, Carroll E. Wilborn.

The Jacksons contend that the recusal issue has been waived because Sun Oil failed to comply with Tex.R.Civ.P. 18a, which provides that motions for recusal may be filed at least ten days before trial. This rule does not apply because there is an allegation of after-acquired knowledge of facts or relationships that, if known before trial, would have given rise to a motion for recusal.[3] In cases where knowledge is not acquired until after trial, an appellate court should be able to determine if the trial judge through his rulings and conduct has displayed favoritism. It is true that many decisions are entrusted to the sound discretion of the trial judge. While individual trial court rulings may not constitute reversible error, an appellate court can nevertheless perceive from the record whether a clear pattern of favoritism emerges. In such instances, the appellate court should have the right to reverse and remand because of bias evident in the record or to affirm because, in spite of the questioned relationship, the record manifests no bias on the part of the trial judge. Another avenue available to appellate courts is to abate the appeal while a hearing is conducted on recusal. The judge assigned to hear the recusal motion will decide whether the trial judge was biased or prejudiced within the meaning of Tex.R.Civ.P. 18b(2), and such ruling could be assigned as an additional ground of appeal.

To unequivocally conclude that Judge Wilborn violated his oath of office because his first cousin had signed pleadings, but did not otherwise participate in the trial of the case, does a disservice to a valued member of the Texas judiciary. It is just as likely that in a county of relatively few lawyers, where the Jackson clan is well known, and indeed unique, it never occurred to Judge Wilborn that anyone who had spent any time at all in Anahuac would not know that he was related to Guy C. Jackson, III. It may have been for this reason, and not any nefarious desire to tilt the scales in favor of his relative, that Judge Wilborn did not reveal his familial relationships.

In summary, Judge Wilborn is not disqualified to preside in this case. Justice Spears concludes that Judge Wilborn should have recused himself. Our decision today, however, requires a remand, at which time the parties may fully develop the record if they so choose. We should let the process continue and not prejudge this issue.

DOGGETT, J., joins in this concurring opinion.

---

3. The Texas Rules of Civil Procedure do not provide for situations where knowledge of familial relationships is acquired after trial begins. Tex.R.Civ.P. 18a(a) should be made comparable to Tex.R.App.P. 15(a) which allows a motion for recusal to be filed late "if the motion is grounded upon reasons not known" and "upon a showing of good cause."