**Affirmed and Plurality and Concurring Opinions filed January 17, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00804-CV

---

### M.B. "BENNY" DANESHJOU, INDIVIDUALLY AND AS THE REPRESENTATIVE OF DANESHJOU COMPANY, INC., Appellant

### V.

### ROBERT H. BATEMAN AND BATEMAN/PUGH, PLLC, Appellees

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2009-49701**

---

## P L U R A L I T Y   O P I N I O N

In this legal-malpractice case, plaintiff M.B. "Benny" Daneshjou appeals the take-nothing judgment entered by the trial court on the jury's verdict. He contends that the trial court misconstrued the jury's findings and improperly applied a settlement credit to eliminate any recovery. Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When a client sues his attorney for the lawyer's allegedly negligent representation of the client in prior litigation, the trial of the legal-malpractice claim requires the parties to litigate "a suit within a suit," because the attorney's performance in the first trial is the subject of the second trial. To maintain the distinction between the facts, findings, and damages assessed in each trial, the two proceedings are discussed separately in this opinion.

## A. The Underlying Lawsuit: The *Bullock* Litigation

Appellants M.B. "Benny" Daneshjou and Daneshjou Company, Inc. build custom homes in Austin, Texas. After a dispute arose over their performance of a construction contract, the corporation sued clients Sandra Bullock and John Bullock, trustee of the Band-Aid Trust (collectively, "the Bullocks"), for unpaid fees. The Bullocks asserted a variety of counterclaims against the corporation and against Benny Daneshjou individually (collectively, "Daneshjou").[1] Attorney Robert H. Bateman of the law firm Bateman/Pugh, PLLC (collectively, "Bateman")[2] defended Daneshjou against the Bullocks' counterclaims.[3] The Bullocks obtained a judgment against Daneshjou for approximately $8.2 million.[4] While the case's appeal was pending, the parties reached a settlement in which Daneshjou's insurer paid the Bullocks $2 million, and Benny Daneshjou's wife

---

[1] In the subsequent legal-malpractice case, "Daneshjou" was defined in the jury charge to mean "Benny Daneshjou, individually and as the representative of Daneshjou Company, Inc." The same convention is followed here.

[2] Just as "Daneshjou" was defined in the jury charge to refer both to the individual and to his company, "Bateman" was defined in the jury charge of the malpractice case to mean both Robert Bateman and his law firm.

[3] Bateman and Daneshjou refer to the *Bullock* litigation as though Daneshjou and the Bullocks were the only parties, and again, the same convention is followed here.

[4] This is the figure used by the parties. Daneshjou and Bateman have not explained how they calculated the $8.2 million figure, and it is not clear what parts of the judgment in the *Bullock* litigation the parties included in arriving at this figure.

purchased the judgment for an additional $2 million.

## B.    The Legal-Malpractice Case

Nearly four years after the settlement, Daneshjou sued Bateman for mishandling his defense in the *Bullock* litigation.  The jury found that Bateman's negligence in defending Daneshjou from the Bullocks' counterclaims proximately caused "the occurrence in question."  The portion of the associated damages question relevant to this appeal, and the jury's finding in response to that portion of the question, were as follows:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Daneshjou, for the damages, if any, that were proximately caused by such negligence?
>
> In answering questions about damages, answer each question separately.  Do not increase or reduce the amount in one answer because of your answer to any other question about damages.  Do not speculate about what any party's ultimate recovery may or may not be.  Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.  Do not add any amount for interest on damages, if any.
>
> . . .
>
> I.    Answer separately, in dollars and cents, for damages, if any, that were sustained by Daneshjou in the **PAST**:
>
> (a)    The amount of damages, if any, assessed against Daneshjou in the underlying lawsuit caused by the failure of Bateman to properly defend the lawsuit.
>
> Answer:    $300,000

In other subparts of this question, the jury was asked to state the amount that would reasonably compensate Daneshjou for past loss of earnings, future loss of earning capacity, and past and future mental anguish, but the jury found that the amount of each of these damages was zero.[5]

---

[5] Because there was a question as to the scope of Bateman's representation, the jury also was asked if Bateman "ha[d] an attorney-client relationship with Daneshjou on its affirmative

After the verdict was received, Bateman filed a motion asking the trial court to calculate Daneshjou's recovery by applying the formula set out in *Keck, Mahin & Cate v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania*, 20 S.W.3d 692, 703 (Tex. 2000) to the jury's damage finding, resulting in a take-nothing judgment. Daneshjou responded that *Keck* is inapplicable and asked the trial court to render judgment against Bateman for $300,000. The trial court signed the take-nothing judgment proposed by Bateman, adding, "The Court's judgment is entered consistent with the guidance found in *Keck*, 20 SW3d 692 (Tex. 2000). The Court may supplement this judgment with its reasoning at a later date."

The trial court denied Daneshjou's motion in which he asked alternatively for a new trial or for reconsideration of the judgment, and Daneshjou appealed.

## II. ISSUES PRESENTED

Daneshjou presents the following two issues for review:

1.     Did the trial court err in construing the jury's verdict of $300,000 to render a take-nothing judgment after application of a $4 million settlement credit?

2.     If the jury's verdict is ambiguous, must the Court remand the case for a new trial, instead of trying to substitute the Court's opinion on the jury's verdict in lieu of the jury's intent?

## III. STANDARD OF REVIEW

A trial court's judgment "shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R. CIV. P. 301. Questions nevertheless arise when a party contends that a jury's verdict is ambiguous or that the trial court misinterpreted an unambiguous verdict.

---

claim against the Bullocks." The jury answered, "No." The jury additionally found that Bateman did not fail to comply with his fiduciary duty to Daneshjou, did not engage in unconscionable action, and was not grossly negligent. Because the jury did not find that Bateman was liable under any theory other than that of professional negligence, this suit is treated solely as a legal-malpractice case.

When faced with competing interpretations of a jury's verdict, the reviewing court's first task is to determine if the verdict reasonably can be interpreted in more than one way. *See Jackson v. U.S. Fid. & Guar. Co.*, 689 S.W.2d 408, 410 (Tex. 1985). To make this determination, one must read the charge "like jurors do—with common sense." *See Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 772 n.3 (Tex. App.—Houston [14th Dist.] 2004, no pet.). If only one interpretation is reasonable, then the verdict will be read in accordance with its plain meaning, because the reviewing court must read an unambiguous verdict "according to the ordinary import of the words used, in the light of the pleading upon which it is based, and in light of the evidence that has been heard to support or overthrow it." *Serv. Life Ins. Co. v. Miller*, 271 S.W.2d 301, 304 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.).

If there are at least two ways in which the challenged finding or findings reasonably can be interpreted, then the verdict is ambiguous. *See Jackson*, 689 S.W.2d at 410. "[I]f the jury findings are ambiguous or unclear, the appellate courts must try to interpret the findings so as to uphold the judgment." *Id.* at 412; *accord*, *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 531 (Tex. 2002) ("If possible, however, we must interpret the jury's findings in a manner to uphold the judgment."). To do so, courts consider the charge, the pleadings, and the evidence. *Jackson*, 689 S.W.2d at 413 (holding that if the appellant complaining of an ambiguous verdict "has not brought forward the statement of facts on appeal . . . [, then he] has not sustained his burden to show error in the trial court judgment").[6] *See also State v. Hale*, 136 Tex. 29, 41, 146 S.W.2d 731, 739 (1941) ("[W]hen the findings on special issues are ambiguous, in order to arrive at their

---

[6] The "statement of facts" referred to in *Jackson* is now known as the "reporter's record." *See In re E.M.W.*, No. 14-10-00964-CV, 2011 WL 5314525, at *2 (Tex. App.—Houston [14th Dist.] Nov. 3, 2011, no pet.) (mem. op.) (tracing the change in terminology).

proper interpretation the court may examine not only the issues submitted, but also the pleadings and the evidence; and after an examination of such pleadings and evidence the intention of the verdict can be ascertained.").

## IV. THE STATE OF THE RECORD

On appeal, "the reporter's record consists of the court reporter's transcription of so much of the proceedings, and any of the exhibits, that the parties to the appeal designate." TEX. R. APP. P. 34.6(a)(1). Daneshjou requested a partial reporter's record consisting solely of the jury charge, opposing counsel's closing argument, transcripts of the post-verdict hearings, and Daneshjou's trial exhibits. The record does not include any of the testimony heard by the jury or any of Bateman's exhibits presented as evidence at trial.

Where, as here, the appellant has requested only a partial reporter's record for review by the appellate court, the presumptions that apply to the evidentiary record are determined by the appellant's actions in specifying the issues to be presented on appeal. If an appellant requests a partial reporter's record and includes in the request a statement of the points or issues to be presented on appeal, then he is limited to those points or issues, and the appellate court must presume that the designated portion of the reporter's record constitutes the entire record for the purpose of reviewing those issues. TEX. R. APP. P. 34.6(c)(1), (4). If the appellant entirely fails to file a statement of points or issues, then the reviewing court must presume that the omitted portions of the record support the findings and the judgment. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (per curiam).

Daneshjou never filed a statement of points or issues to be presented on appeal, but as Bateman has pointed out to this court, many of the arguments that Daneshjou raises are based on the facts of the case. Because we have an incomplete record and no statement of issues, we will presume that the omitted

6

portions of the record support the judgment. *Jackson*, 689 S.W.2d at 412. To the extent that the issue is purely a matter of law, the argument is reviewed without that presumption.

### V. PROPRIETY OF THE TAKE-NOTHING JUDGMENT

In his first issue, Daneshjou contends that, for a variety of reasons, the verdict does not support the take-nothing judgment. To understand his arguments, it is helpful to begin by reviewing the governing law and demonstrating how it was applied in this case.

### A.    The *Keck* Formula

To prevail on a legal-malpractice claim, a plaintiff must establish by a preponderance of the evidence "'that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred.'" *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995)). "Breach of the standard of care and causation are separate inquiries," and each must be proved. *Id.* at 119. If the legal-malpractice claimant alleges that his attorney's negligence "caused an adverse result in prior litigation," then the claimant must produce evidence from which a reasonable factfinder could infer that the attorney's conduct caused the damages alleged. *Id.* at 117 (citing *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex. 1995)). In such circumstances, the client—or one standing in the shoes of the client[7]—is entitled to recover only to the extent that the attorney's negligence

---

[7] In *Keck*, the client's excess insurer paid to settle a third party's case against the insured, then sued the insured's defense attorney, alleging that, but for the attorney's negligence, the case could have been settled for a lower amount. *Keck*, 20 S.W.3d at 700. The court explained that although the plaintiff in the malpractice case was the insurer rather than the attorney's client, the carrier was permitted "to stand in the shoes of its insured and assert the insured's claims." *Id.* (citing *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex. 1992)).

caused the client to pay more to the third party than the client would have paid if his attorney had not been negligent.[8] Thus, to assess damages against an attorney for providing a negligent defense in prior litigation, the client first must establish the extent to which the attorney's negligence increased the value of the case against the client.[9] *See Keck*, 20 S.W.3d at 703. If the case settles for less than its "true value," i.e., the value that the case would have had if it had been competently defended, then the attorney's malpractice caused the client no harm. *Id.*

To account for this effect, the Texas Supreme Court has specified the formula to apply when a client, after settling a third party's case against it, sues its own attorney for allegedly driving up the case's value—and thus, the cost to settle the case—by providing a negligent defense. In such a case, the client's recovery of the increased settlement cost is equal to (1) the amount by which the attorney's "malpractice inflated [the underlying case's] value . . . less (2) any amount saved by the settlement." *Id.* The first number, i.e., the number representing the extent to which malpractice inflated the case's value, is equal to the difference between the case's "true value"—that is, the case's value with "a reasonably competent, malpractice-free defense"—and the case's "inflated value," i.e., its value if the defense is not "malpractice-free." *Id.* at 703 & n.5. The second number—that is, the number representing the "amount saved by the settlement"—is the difference between the inflated value and the amount paid to settle the case. *See id.* at 703.

**B.    The Trial Court's Application of *Keck* to Daneshjou's Malpractice Claim**

Here, Daneshjou and Bateman agree that in the underlying suit, judgment on the Bullocks' claims was rendered against Daneshjou in the amount of $8.2

---

[8] In light of the jury's findings, the source of the payments in this case does not affect the analysis; thus, all payments made on Daneshjou's behalf are treated as though the payments were made directly by Daneshjou.

[9] Neither this case nor *Keck* concerned non-monetary judgments.

million.  The jury in this case found that Bateman was negligent, and Bateman has not challenged this finding; thus, the $8.2 million judgment in favor of the Bullocks represents that case's value as inflated by Bateman's malpractice.  In the *Keck* formula, then, the "inflated value" of the underlying case is $8.2 million.  It also is undisputed that the amount paid to settle the Bullocks' claims was $4 million.

The jury in this case was asked to find "[t]he amount of damages, if any, assessed against Daneshjou in the underlying lawsuit caused by the failure of Bateman to properly defend the lawsuit."  In effect, the jury was asked, "Of the $8.2 million of damages assessed against Daneshjou in the *Bullock* litigation, what amount was caused by Bateman's negligence?"  The jury answered, "$300,000."  Thus, of the $8.2 million assessed against Daneshjou in the *Bullock* litigation, the jury found that only $300,000 was proximately caused by Bateman's negligence.  The jury, by implication, determined that the true value of the case was $7.9 million ($8,200,000 minus $300,000).  Bateman then asked the trial court to render judgment on the verdict in accordance with *Keck*, because the parties to the *Bullock* litigation had settled that case for an amount that was less than the case's true value.

## C.    Daneshjou's First Issue

Daneshjou argues the following: (1) the trial court misconstrued the language of the damages question actually submitted to and answered by the jury; (2) the trial court improperly assumed that the jury made an additional finding that it was not asked to make; (3) the trial court assumed that the jury calculated the *Bullock* litigation's true value, but such an assumption was invalid because the jury was not asked to perform such a calculation; (4) the trial court committed an error of law by failing to interpret the jury's finding in light of defense counsel's closing argument; and (5) given the way in which this malpractice case was tried, it would

9

be inequitable or unreasonable to apply *Keck* to eliminate any recovery. For the reasons described below, none of these arguments has merit.

### 1. *Construction of the Language of the Jury Charge*

In the charge, the jury was asked to determine "[t]he amount of *damages . . . assessed against Daneshjou in the underlying lawsuit*" caused by Bateman's negligence.[10] Although Daneshjou contends that the trial court misconstrued the jury's answer, the question is unambiguous. The language italicized above clearly refers to the *Bullock* judgment. It is undisputed that the "underlying lawsuit" is the *Bullock* litigation. The "damages . . . assessed against Daneshjou" in that lawsuit are the $8.2 million damages assessed against Daneshjou in the final judgment of the *Bullock* litigation. Of the damages assessed against Daneshjou in that judgment, the damages "caused by" Bateman's negligence are those that would not have been assessed against Daneshjou "but for" Bateman's negligence. *See Akin, Gump, Straus, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009) (explaining that to prove attorney negligence was the cause-in-fact of the harm at issue, the claimant must prove that "but for" the negligence, the harm would not have occurred).

In treating the jury's answer to this question as a finding of the amount by which Bateman's negligence inflated the true value of the *Bullock* litigation, the trial court did not misconstrue the jury's finding. "As the issue was clear and unambiguous, so was the jury's verdict. . . . There [was] nothing to construe." *Branch v. Smith*, 245 S.W. 799, 800 (Tex. Civ. App.—Beaumont 1922, no writ).

### 2. *Absence of a Jury Finding on the True Value of the* Bullock *Litigation*

Daneshjou next asserts, "To get to the take-nothing judgment that was rendered by the court, one must assume that the jury was asked to determine what

---

[10] Emphasis added.

the judgment in the underlying case should have been," i.e., what the true value of the case would have been in the absence of Bateman's negligence. He reasons that because the jury was not asked to make that determination, the trial court should have construed the jury's finding to be a determination of the amount of Daneshjou's ultimate recovery. He also argues that because the trial court refused Bateman's request to include a question in the charge about the *Bullock* litigation's true value, the jury's damage finding must not have included a true-value finding, but instead must represent the amount that Daneshjou is to recover from Bateman.

The trial court refused Bateman's request for a finding of the underlying case's true value after Daneshjou argued that this finding was unnecessary because it was already in the damage question. This is correct. As discussed above, the unambiguous language of the jury question shows that the jury was asked to find the amount by which the damages assessed were increased as a result of Bateman's negligence. The underlying case's true value is implied in that question.

If it were necessary for the jury to make a separate finding about the case's true value, then it would have been an omitted finding for which Daneshjou bore the burden of proof. *See Keck*, 20 S.W.3d at 703. The trial court made no express finding about the true value of the *Bullock* litigation; thus, any additional findings necessary to support the judgment must be deemed found if supported by the record. TEX. R. CIV. P. 279. Here, however, Daneshjou brought forward only a partial record and did not specify the points or issues to be presented on appeal; thus, it is presumed that the omitted portion of the record supports any necessary deemed finding. *See Heights Sav. Ass'n v. Cordes*, 412 S.W.2d 372, 375 (Tex. Civ. App.—Houston 1967, no writ).

In sum, this argument cannot support reversal of the judgment.

### 3. *The Jury's Decision-Making Process*

Daneshjou also argues that the jury arrived at an answer that already

11

included the settlement because evidence about the settlement was admitted at trial. Presumably, however, the jury followed the instructions in the charge. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009).

To the extent that Daneshjou is complaining about the way in which the jury arrived at its decision, we cannot consider his argument. The individual jurors' mental processes "cannot change the legal effect of the jury's finding." *M. R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 619 (Tex. 1995) (per curiam). Daneshjou did not ask the trial court to instruct the jury to arrive at its finding by a particular path; he does not complain of charge error; he does not contend that there is insufficient evidence to support the jury's finding—regardless of how the jury arrived at its answer—and given the partial record before us, we must presume that whatever calculations the jurors performed were supported by the evidence. *See Bennett*, 96 S.W.3d at 229.

### 4. *Failure to Construe the Jury Charge in Light of Defense Counsel's Closing Argument*

Daneshjou additionally asserts that the trial court effectively applied a settlement credit twice because during closing argument, Bateman's counsel purportedly urged the jury to take the settlement into account when assessing damages. Daneshjou does not attempt to overcome the presumption that the jury followed the instructions in the charge. *See Columbia Rio Grande Healthcare*, 284 S.W.3d at 862. He does not contend that the arguments were objectionable, much less that they were so incurably prejudicial as to taint the jury's answer to the unambiguous question at issue in this appeal. *See* Tex. R. App. P. 33.1. In the jury question, the settlement is not mentioned at all, and a reviewing court is not free to create an ambiguity in the jury's verdict where none exists. *See Sun Exploration &*

*Prod. Co. v. Jackson*, 783 S.W.2d 202, 205 (Tex. 1989) (op. on reh'g).[11]

### 5. *Evidentiary Arguments*

Finally, Daneshjou relies on his own trial exhibits in arguing that his malpractice case "involved damage claims regardless of any settlement of the underlying judgment" and that "under the theories tried to the jury" or "given the evidence in front of the jury," it would be unreasonable or inequitable to apply *Keck* and thereby eliminate any recovery. These assertions are not supported by authority, and given the partial record, this court must presume that the omitted portion of the record supports the judgment. *See Bennett*, 96 S.W.3d at 229; TEX. R. APP. P. 38.1(i) (appellant's argument must be supported by "appropriate citations to authorities and to the record").

In sum, there is no merit to any of Daneshjou's arguments. His first issue therefore is overruled.

## D. Daneshjou's Second Issue

In his second issue, Daneshjou argues that if the jury verdict is ambiguous, the court should remand the case for a new trial. In support of this position, Daneshjou argues as follows:

> [T]rial judges are not to be permitted to interpret jurors' intent. *Northern Texas Traction Co. v. Armour & Co.*, 116 Tex. 176, 288 S.W. 145 (1926). As was said in *Moore v. Moore*, 67 Tex. 293, 297, 3 S.W. 284, 286 (1887), "as to the true construction of such a verdict, neither the lower court nor this court is permitted to speculate."

To determine if a verdict is ambiguous, however, one must review the entire factual record. Because Daneshjou neither brought forward the reporter's record nor filed a statement of points to be presented on appeal, it is presumed that the omitted parts of the record support the interpretation of the verdict reflected in the

---

[11] Affirmance would be required even if the verdict were ambiguous. *See Jackson*, 689 S.W.2d at 413.

judgment. *Jackson*, 689 S.W.2d at 412.

Daneshjou's second issue is overruled.

## VI. CONCLUSION

The jury provided a straightforward answer to an unambiguous question, and in rendering judgment on the verdict, the trial court properly applied binding precedent. Because no reversible error has been shown to exist, the trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Justices Frost, Christopher, and Jamison (Frost J., and Jamison, J., concurring).